TENNESSEE COAL, IRON & RAILROAD CO. v. HALEY.

(Circuit Court of Appeals, Fifth Circuit. February 8, 1898.)

No. 637.

1. WITNESSES—EVIDENCE OF CHARACTER—EX-CONVICT.
    A party who is obliged to use as a witness an ex-convict may show by his testimony that he was a "trusty."

2. SAME—SHOWING INTEREST.
    Where an employé is used as a witness, it is permissible for the adverse party to show what wages he receives.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This was an action by John A. Haley, as administrator of Walter Haley, deceased, against the Tennessee Coal, Iron & Railroad Company to recover for the wrongful death of his intestate, under the employer's liability statute of Alabama. Judgment for plaintiff, and defendant brings error.

The case is fairly stated by counsel for plaintiff in error as follows:

This was an action for damages for the wrongful death of defendant in error's intestate while in the employment of the plaintiff in error in one of its coal mines in or near Birmingham, Ala. The action is brought under the employer's liability act of Alabama, which is section 2590 of the Code of Alabama of 1886. The negligence charged in the complaint against plaintiff in error is the failure to prop a piece of rock or slate in the slope of its coal mine, by reason of which failure it is charged that the rock or slate fell on the intestate while he was walking under it, in pursuance of his duty as such employé, killing him, as alleged in the complaint. The evidence as to the negligence of the plaintiff in error was conflicting, and no question of law is raised on this issue by the assignments of error. The principal assignments of error are based on the rulings of the trial court on the admission and rejection of testimony. The third charge refused by the court, and requested by the plaintiff in error, raises the question of the intestate's contributory negligence. The facts, briefly stated, are as follows: The intestate was in charge of a gang of two or three convicts, repairing the tram track that ran down the slope of the coal mine. After having repaired a place in the track, the gang started by the usual route to get water to drink. As they were passing through the slope to the watering place, a piece of rock or slate fell from the roof of the slope on the intestate, causing his instant death. The testimony of the defendant in error tended to show that this piece of rock or slate had been at one time propped, and that 10 or 12 months before the accident a trip of tram cars had jumped the track at this place, and knocked the props, holding this piece of rock or slate, down, and that the props had never been replaced, though the piece of rock or slate was loose before and after the props were knocked down, and that the condition of this place in the roof could have been discovered by sounding it with a pick or hammer, which it was the duty of one Holder to do, long before the time of the accident. The testimony offered by defendant in error also tended to show that the witness Holder was informed that the props had been knocked out shortly after they were knocked out, and that it was his duty to have them replaced, which he failed to do. The testimony of plaintiff in error, on the contrary, tended to show that no props had ever been placed where the intestate met his death, but that the props referred to by the testimony of defendant in error were at another and different place from that at which intestate was killed. The testimony of plaintiff in error tended to show that the rock or slate that fell on intestate was to all appearances sound and safe up to the time it fell; that its condition could only be detected by sounding; that it was the custom only to sound where there were visible indications of danger; that a piece of slate might become detached from the roof of a mine in as short a space as an hour from the action of water on the slate. The undisputed testimony showed that intestate was put in charge of the gang

with which he was working 10 days, at least, before his death; that he had worked in the mine about a year; that he had taken the place of one Holder, and that Holder's duties became his duties after such change; that the change was a temporary one only; that Holder's duties were to watch the roof for bad places, and report them to the mine boss, and that intestate assumed this duty when he took the place of Holder; that intestate had been instructed by his brother, who was mine boss, to keep a lookout for bad places, and report them; and that he had, prior to his death, in fact reported bad places in the roof to his brother, and knew when such places existed, though it was not his business to remedy them, nor did he have experience enough to do so; but that it was his duty to discover them, as it was Holder's before him. The defendant in error also offered testimony tending to show the pecuniary value of intestate's life to his next of kin, the measure of damages under the employer's liability act of Alabama being compensatory to the next of kin, under the decisions of the supreme court of Alabama.

Walker Percy, W. I. Grubb, and L. A. Dean, for plaintiff in error.

F. S. White and A. O. Lane, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PER CURIAM. The first assignment of error complains of the ruling of the trial court in permitting a certain ex-convict, who was called as a witness to facts coming within his knowledge and observation while serving his sentence in the employment of the plaintiff in error, to answer that he was one of those convicts who had liberties, called a "trusty." As the defendant in error was compelled to call this witness and present him to the jury as an ex-convict, it was proper to inquire of the man himself how far his liberty was restrained, to show his obedient and law-abiding conduct as an offset to his conviction, and to show absence of ill feeling or animosity towards his employer against whom he was called to testify. The second assignment of error presents substantially the same question. Neither is good.

The third and fourth assignments of error are not well taken, if for no other reason, because the record does not show whether the brothers and sisters of the plaintiff's intestate were or were not minors, more or less dependent upon their brother for support.

The fifth, sixth, and eighth assignments of error complain of questions which were properly allowed to be asked of witnesses who were employés of the plaintiff in error, to show their interest and prejudice, or lack of the same.

The seventh and ninth assignments complain of evidence admitted over objection, but subsequently withdrawn, under instructions from the court to the jury not to consider the same.

The tenth assignment is without merit. It was permissible to show the wages Holder was receiving from the plaintiff in error to show his interest as a witness, and as tending to show that plaintiff's intestate was not the successor of Holder.

The eleventh and twelfth assignments of error are not well taken, because the evidence in the case was conflicting; and the thirteenth assignment is bad because the charge requested did not correctly state the law.

On the whole record, we find no reversible error, and the judgment of the circuit court is affirmed.